UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KARL E.,

                    Plaintiff,

v.                                          CASE NO. 1:24-cv-00113
                                          (JGW)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Docs. 12, 14). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 12) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 14) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.    RELEVANT BACKGROUND

### A.    Procedural Background

On January 8, 2021, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income, alleging disability beginning January 1,

2017.[1]  (Tr. 68, 76.)  Plaintiff's claims were denied initially and on reconsideration.  (Tr. 65-66, 127-28.)  He then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 173-74.)  Plaintiff appeared with counsel for a telephonic hearing before ALJ John Benson held on November 22, 2022.  (Tr. 38-64.)  On January 3, 2023, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled.  (Tr. 14-37.)  On November 28, 2023, the Appeals Council denied Plaintiff's request for review, (Tr. 1-6), and Plaintiff timely filed his appeal to this Court.

> ### B.    Factual Background[2]

Plaintiff was born November 6, 1968, and ultimately obtained a GED.  (Tr. 29.)  He initially alleged his disabling conditions to include chronic obstructive pulmonary disease (COPD), posttraumatic stress disorder (PTSD), two herniated discs in his back, severe anxiety, and depression.   (Tr. 68.)   At the hearing, Plaintiff's counsel indicated that Plaintiff's mental health, but also his back injury, had been getting worse over time such that Plaintiff could no longer work.  (Tr. 43-44.)

Plaintiff described a typical day, which included stretching and loosening his muscles, engaging in DuoNeb treatments in order to stimulate his lungs, making himself meals, performing a little housework, watching television, and playing with his dog. (Tr. 48-49.)  He indicated he did not have any hobbies.  (Tr. 49.)

Plaintiff described that he has high anxiety and has basically become a recluse because of his mental state.  (*Id.*)  He indicated he experiences anxiety attacks and can only work a few hours at a time before he is exhausted.  (*Id.*)  These anxiety attacks cause

---

[1] During the hearing, Plaintiff's counsel amended the alleged disability onset date to August 18, 2020.  (*See* Tr. 51-52.)

[2] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

Plaintiff to be unable to think about what he is saying and make him feel powerless. (Tr. 53.) He explained that loud noises trigger his anxiety and anxiety attacks, but he did not know what else might trigger him. (Tr. 54.) For these reasons, Plaintiff indicated that he avoids stores and restaurants. (*Id.*)

Plaintiff testified that he believed he could lift 10 pounds, explaining that bending over to pick anything up was challenging. (Tr.49.) Plaintiff described that he was no longer getting treatment for his back but rather was trying to do less, as his previous treatment was very painful. (Tr. 50.) He also explained that he could "get by with the pain" without narcotics, but he could not exert himself because of his inability to breathe and his back pain. (*Id.*)

Plaintiff indicated that he used marijuana to help his anxiety and back pain, and it also helps him sleep. (Tr. 53.) Plaintiff testified he had difficulty focusing and paying attention (Tr. 54.)

### C.    ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2022. (Tr. 19.)

2. The claimant has not engaged in substantial gainful activity since August 18, 2020, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*). (Tr. 19.)

3. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, chronic obstructive pulmonary disease, anxiety, post-traumatic stress disorder and substance abuse disorder (20 CFR 404.1520(c) and 416.920(c)). (Tr. 20.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 20.)

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional balancing, stooping, kneeling, crouching, crawling or climbing of ramps or stairs but never climbing ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to extreme cold, atmospheric conditions and concentrated exposure to workplace hazards such as unprotected heights and dangerous moving machinery. The claimant is limited to simple tasks, no interaction with the public and occasional interaction with co-workers and supervisors. (Tr. 22.)

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). (Tr. 28.)

7.  The claimant was born on November 6, 1968 and was 48 years old, which is defined as an individual closely approaching advanced age, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963). (Tr. 29.)

8.  The claimant has at least a high school education (20 CFR 404.1564 and 416.964). (Tr. 29.)

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 29.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a). (Tr. 29.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 18, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)). (Tr. 30.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and

were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B.    Standard to Determine Disability**

To be disabled under the Social Security Act (Act), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability

to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.    ANALYSIS

Plaintiff asserts two intertwined arguments in support of remand, both focused on the mental limitations contained within the ALJ's RFC,[3] where the ALJ restricted Plaintiff to "simple tasks, no interaction with the public and occasional interaction with co-workers and supervisors."  (Tr. 22.)  Plaintiff first contends that the ALJ's limitations on social interactions with supervisors, coworkers, and the public, although distinct, are not supported by substantial evidence.  (*See* Doc. 12-1 at 16.)  Plaintiff then urges that the ALJ improperly substituted his own lay judgment for that of the mental health experts by choosing a "middle ground" between the restrictions set forth in the medical opinions. (*See id.* at 16, 18, 23.)

---

[3] Because Plaintiff focused his challenges on the ALJ's mental RFC, the Court will limit its analysis to the mental RFC.

The Court will begin with a review of the pertinent medical opinions.[4]  Upon initial review, the agency reviewer found insufficient evidence to assess an RFC.  (Tr. 71-72; 80-81.)  On reconsideration, agency reviewer Dr. Dekeon, who reviewed Plaintiff's file based on evidence at that time, assigned a mild limitation to Plaintiff's ability to interact with others, as well as the other three Paragraph B criteria.  (Tr. 93,115.)  He assessed non-severe mental health impairments overall.  (Tr. 94, 116.)  Next, Dr. Deneen, a consultative examining psychologist, noted that Plaintiff reported becoming nervous in crowds of people or when confronted with different personalities.  (*See* Tr. 713.)  Dr. Deneen opined that Plaintiff would have mild limitations in making work-related decisions, sustaining concentration, performing tasks at a consistent pace, regulating emotions, controlling behavior, and maintaining well-being.  (*See* Tr. 716.)  Otherwise, Dr. Deneen did not assess any other limitations on Plaintiff's mental abilities, including interacting adequately with supervisors, co-workers, and the public.  (*See id.*)

Plaintiff's examining psychiatrist, Raja Rao, M.D., also submitted an opinion following examination for a state disability program. (Tr. 581-82.)  While Dr. Rao concluded that Plaintiff was unable to work, an issue reserved for the Commissioner and thus unpersuasive, the ALJ noted that "the Dr. opined no more than moderate limitations interacting with others, maintaining socially appropriate behavior and functioning at a consistent pace and otherwise no limitations in understanding, remembering or carrying out instructions, maintaining attention/concentration, making simple decisions and

---

[4] Plaintiff's therapist Dodds opined that Plaintiff was unable to maintain employment or engage in classroom type work for a period of time. (*See* Tr. 27.) However, as the ALJ recognized, whether Plaintiff can engage in employment is an issue reserved for the Commissioner, and thus the ALJ found the opinion to unpersuasive. (Tr. 27-28.) The parties have not challenged the ALJ's finding, and so the Court will not include it within its discussion here.

maintaining basic standards of hygiene and grooming." (Tr. 27); (*see also* Tr. 582.) Finally, Nurse Practitioner (NP) Pfalzer opined that Plaintiff had marked limitations in the ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. (Tr. 1081.) NP Pfalzer further concluded that Plaintiff could handle less than occasional interaction with supervisors and the public, as well as occasional interaction with co-workers. (*See* Tr. 1085.) He also indicated that Plaintiff would be absent from or late to work four or more days a month and be off task more than 20% of the workday, all due to Plaintiff's mental health conditions. (*See id.*)

The ALJ carefully evaluated each of these opinions and concluded that Plaintiff should be "limited to simple tasks, no interaction with the public and occasional interaction with co-workers and supervisors." (Tr. 22.) He found the opinions of Drs. Dekeon and Deneen partially persuasive in part because the totality of the evidence reflected more than the mild or lack of limitations assigned by these doctors. (*See* Tr. 27.) As to Dr. Dekeon's opinion, he noted that "[t]he totality of evidence is consistent with more than mild limitations in concentrating, persisting and maintaining pace and interacting with others on a sustained basis." (*Id.*) He further recognized as to Dr. Deneen's opinion that "the residual functional capacity is not based upon objective evidence alone, and the longitudinal history of treatment for anxiety and PTSD, along with consistent symptomatic complaints of fear of crowds, trust issues and decreased concentration are consistent with more than minimal symptoms and limitations in those area[s] of function." (*Id.*)

The ALJ found the opinion of Dr. Rao unpersuasive because the doctor did not explain an objective basis for his findings, although the ALJ noted that the moderate limitations opined by Dr. Rao were consistent with the RFC limitations. (Tr. 27.) Further,

the ALJ found NP Pfalzer's opinion unpersuasive because it was generally not supported with objective evidence and, to the contrary, was inconsistent with the evidence in the record, including normal mental status findings.  (Tr. 28.)

Separately, in his analysis of the Paragraph B categories, the ALJ found mild limitations in understanding, remembering, or applying information, as well as adapting or managing oneself.  (*See* Tr. 20, 21.)  He then assigned moderate limitations as to interacting with others and concentrating, persisting, or maintaining pace.  (Tr. 21.)  With regard to interacting with others, the ALJ provided the following explanation:

> In terms of interacting with others, the claimant has moderate limitations. Longitudinal mental status examinations from treating and examining providers noted in the preceding paragraph generally observed cooperative behavior during the clinical setting. However, the record documents longitudinal mental health treatment, primarily for anxiety and post-traumatic stress. Moreover, the claimant has consistently reported a fear of crowds and trust issues associated with the anxiety and trauma (Id). Additionally, therapist Hart, therapist Dodds, nurse Pfalzer and Dr. Deneen have all observed anxious mood or affect during the clinical setting and the three treating clinicians have also observed irritable behavior on occasion. The record documents some friendships, but given the well-established history of anxiety and trauma, the reported symptoms consistent with those impairments and the occasional observations of anxiousness or irritability, I find the evidence consistent with moderate limitations interacting with others.

(Tr. 21) (internal citations omitted).

A claimant's RFC is the most he can still do despite his limitations and is based on all relevant evidence in the record.  *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996).  The regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations");

*see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78.  Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  This remains the case even if the ALJ decides not to afford controlling weight to any of the medical opinions in the record.  *Schillo*, 31 F.4th at 78.  "An ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence.*"  Rebecca B. v. Comm'r of Soc. Sec.*, 22-cv-00631-HKS, 2025 WL 90625, at *4 (W.D.N.Y. Jan. 14, 2025) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).

Detrimentally, Plaintiff's arguments are, in essence, that no medical opinion mirrors the social limitations contained within the RFC, and so they are not supported by substantial evidence.  But that argument has been firmly rejected by the Second Circuit and courts within this district.  *See Schillo*, 31 F.4th at 78; *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-10 (2d Cir. 2020) (summary order) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [Plaintiff's] residential functional capacity.'"); *Daniel B. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06655 EAW, 2025 WL 899005, at *4 (W.D.N.Y. Mar. 25, 2025) (acknowledging that "the RFC need not mirror any one medical opinion.")  An ALJ must consider all record evidence in crafting his RFC finding and need

not assign controlling weight to any one of the medical opinions.  *See Schillo*, 31 F.4th at 78; *Matta*, 508 F. App'x at 56.

Moreover, having carefully reviewed the record, the Court finds that the ALJ's mental limitations,[5] including those as to social contact with the public, coworkers, and supervisors, are supported by substantial evidence.[6]  To begin, the record evidence supports the ALJ's social interaction limitations.  Generally, Plaintiff's treatment notes reflected that Plaintiff had difficulty in crowds.  (*See* Tr. 497, 660, 821.)  Plaintiff reported as much in his evaluation with Dr. Deneen.  (*See* Tr. 713.)  But the record also demonstrated that Plaintiff was mostly pleasant and cooperative with healthcare providers and had mostly normal mental health examinations.  (*See* Tr. 500, 638-41, 643, 645-47, 648, 654-55, 657, 661, 663, 824, 866, 1045.)  He also maintained friendships and social interactions in small groups. (*See* Tr. 512, 543).  He even worked "side jobs," presumably with someone directing his activities.  (*See* Tr. 861) (Plaintiff "reports working side jobs recently . . .").  Plaintiff was never terminated from a job due to problems getting along with others and also admitted that he got along with authority figures "ok."  (Tr. 329.)

---

[5] Although not directly challenged by Plaintiff, the Court notes that the ALJ limited Plaintiff to "simple tasks," which accounts for Plaintiff's moderate difficulty in concentrating, persisting, or maintaining pace.  *See Terrence S. B. v. Comm'r of Soc. Sec.*, No. 1:22-cv-0380(JJM), 2024 WL 4131237, *6 (W.D.N.Y. Sept. 10, 2024) (RFC limiting plaintiff to simple, routine and repetitive tasks was sufficient to accommodate limitations in concentration, persistence, and pace).  *See also Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) (noting that it is "well-established that . . . moderate limitations do not prevent individuals from performing 'unskilled work'") (quoting *Zabala v. Astrue*, 595 F.3d 402, 410–11 (2d Cir. 2010)).  Thus, this finding is supported by substantial evidence.

[6] Plaintiff appears to concede that the ALJ's RFC as to contact with the public and with coworkers is supported by substantial evidence.  (*See* Doc. 12-1 at 17) (recognizing that NP Pfalzer's opinion supported the ALJ's limitations as to the public and coworkers "leav[ing] only the social limitations with regard to supervisors lacking substantial evidence.")  The Court agrees that the ALJ's limitations as to the public and coworkers are supported by substantial evidence, and it further finds that the limitation as to supervisors is similarly supported by substantial evidence.

ALJ Benson correctly considered the above record evidence in evaluating the medical opinion evidence.  He reasonably concluded that, in light of the above, Plaintiff was more than mildly limited in interacting with others, as opined by Dr. Deneen, ultimately concluding Plaintiff was moderately limited.  (*See* Tr. 21.)  This conclusion imposed more significant limitations than proposed by either Dr. Deneen, or Dr. Dekeon, who found no impairment, but this was appropriate.  *See Jason S. v. Comm'r of Soc. Sec.*, No. 21-cv-101-RJA, 2023 WL 4991928, at *3 (W.D.N.Y. Aug. 4, 2023) (recognizing that "[w]hile the state agency consultant's opinion is only partially consistent with the record in its entirety, the ALJ accounted for any discrepancies by imposing greater restrictions") (internal citations omitted).  The ALJ also reasonably rejected the most limiting portions of NP Pfalzer's opinion as inconsistent with the record evidence, including NP Pfalzer's own treatment notes.  *See Shane W. v. Comm'r Soc. Sec.*, No. 1:23-cv-01313-CJS, 2025 WL 723116, *10 (W.D.N.Y. Mar. 6, 2025)  (recognizing that the ALJ properly discounted a medical opinion based on subjective complaints inconsistent with objective evidence, especially when having concluded that the extent of Plaintiff's purported limitations were not supported by the record).

Thus, the record evidence, including medical opinion evidence, generally demonstrates that Plaintiff struggled in crowds, thus supporting the ALJ's limitation on Plaintiff's interaction with the public. However, there is no evidence that Plaintiff had the same level of difficulty associating with coworkers or supervisors.  To the contrary, the evidence suggests that he socially engaged with people well in small groups and had no history of difficulties with coworkers or supervisors.

In fact, Plaintiff identifies no evidence compelling a different conclusion, which remains his burden.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (recognizing that a plaintiff has the duty to prove a more restrictive RFC).  Rather, he relies primarily on NP Pfalzer's more stringent limitations.  But the ALJ reasonably found this opinion to be unpersuasive generally, as it was inconsistent with the entirety of the medical evidence which suggested no more than moderate limitations in interaction with others.  *See Christian J. v. Comm'r of Soc. Sec.*, No. 6:18cv-1004(ATB), 2019 WL 6840130, at * 6 (N.D.N.Y. Dec. 16, 2019) (citing *Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) ("The ALJ did not err in declining to afford [plaintiff's treating psychiatrist] controlling weight because his opinion is inconsistent with his treatment notes and diagnostic observations, the other medical opinion evidence, and [plaintiff's] reported activities of daily living.")) (collecting cases).

Moreover, any error by the ALJ regarding the imposed limitation on interaction with supervisors is harmless because, as set forth above, substantial evidence supports the limitation.  *See Lajason L. v. Comm'r of Soc. Sec.*, 6:20-cv-6884-EAW, 2023 WL 2480577, at *5 (W.D.N.Y. Mar. 13, 2023) (internal citation omitted).  Furthermore, NP Pfalzer did not opine that Plaintiff could have no contact with supervisors—only that he have "less than occasional contact with supervisors. (*See* Tr. 1085.)  Importantly, the jobs identified by the vocational expert all have a "people rating" of 8.  (*See* Tr. 30) (identifying the DOT numbers for the jobs identified by the VE to be 222.687-014, 222.587-038, 209.687-026) and Program Operations Manual System (POMS) DI 25001.001(A)(15), available at *https://secure.ssa.gov/apps10/poms.NSF/lnx/0425001001* (recognizing that the "people level" is the fifth digit of the DOT job number).  A "people rating" of 8 is the

lowest level of social interaction and requires no significant contact with people, including supervisors. *See Daniel B.*, 2025 WL 899005, at *7; *see also* DOT, Appendix B, 1991 WL 688701 (1991) (defining level 8 interaction as: "Taking Instructions—Helping: Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed). Helping applies to 'non-learning' helpers.")  "Positions categorized as involving level 8 interaction can be performed by individuals who require limited interaction with supervisors." *Whitehorne v. Comm'r of Soc. Sec.*, No. 19-CV-0256MWP, 2020 WL 5077025, at *4 (W.D.N.Y. Aug. 27, 2020) (citing *Call v. Comm'r of Soc. Sec.* 2017 WL 2126809, *5 (N.D.N.Y. 2017); *Alie v. Berryhill*, 2017 WL 2572287, *16 (E.D. Mo. 2017) ("[l]evel 8 interaction is compatible with a RFC limiting a claimant to only superficial contact with coworkers, supervisors, and the public"); *Race v. Comm'r of Soc. Sec.*, 2016 WL 3511779 at *5 n.4; *Sanchez v. Colvin*, 2014 WL 5147793, *16 (M.D. Pa. 2014) ("a position with this 'people' code is one that can be performed despite limitations in interacting with supervisors") (collecting cases)). Accordingly, the jobs identified by the vocational expert would accommodate heightened restrictions with a supervisor, and so there is no remandable error.

While Plaintiff argues that the ALJ's RFC was an improper "middle ground" between the medical opinions, the Court disagrees.  Nothing required the ALJ to adopt any one opinion in its entirety, which is essentially what Plaintiff advocates. *See April W. v. Comm'r of Soc. Sec.,* No. 1:24-cv-00044-MAV, 2024 WL 4804778, at *5 (W.D.N.Y. Nov. 14, 2024) (recognizing that an ALJ "is free to reject portions of medical-opinion evidence not supported by objective evidence") (quoting *Demeca P. v. Comm'r of Soc. Sec.,* No 1:22-cv-0504, 2024 WL 4505265, at *4 (W.D.N.Y. Oct. 16, 2024)).    To the

contrary, it is well-settled that "[a]n ALJ may rely on portions of several opinions to craft the RFC." *See Jason S. v. Comm'r of Soc. Sec.*, No. 21-cv-101-RJA, 2023 WL 4991928, at *3 (W.D.N.Y. Aug. 4, 2023) (internal citation omitted).

That is just what the ALJ did here. He considered the medical opinions in light of the record evidence to formulate an RFC that adequately reflected Plaintiff's abilities. Significantly, the RFC limitations were based on substantial evidence in the record—not arbitrarily formulated. To the extent he disagreed with a medical opinion, the ALJ explained his analysis of and reason for rejecting the opinion. (*See* Tr. 28) (explaining that he found NP Pfalzer's opinion unpersuasive because he provided "no objective evidence to support the assessment" which was "not consistent with the largely normal mental status findings").

Alternatively, Plaintiff argues that a gap in the record exists because, when the ALJ rejected both medical expert opinions, he had a duty to further develop the record. The Court acknowledges that "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). This requires the ALJ to develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)–(f)). However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)). *See also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir.

2018) ("[An] ALJ is not required to develop the record any further when the evidence already presented is adequate for the ALJ to make a determination as to disability.")  In this case, there were multiple medical expert opinions and a complete medical history. The ALJ's failure to adopt a medical opinion in its entirety cannot create a gap in the record as Plaintiff argues because, as discussed above, formulating the RFC is an administrative finding made in consideration of the medical evidence.  *See Schillo*, 31 F.4th at 78 (acknowledging that an ALJ must consider all record evidence in crafting his RFC finding and need not assign controlling weight to any one of the medical opinions). Further, this case is distinguishable from *Bonita B. v. Comm'r of Soc. Sec*., 20-cv-1894-MWP, 2023 WL 2342757, at *4 (W.D.N.Y. Mar. 3, 2023), on which Plaintiff relies, because in *Bonita B.*, there were no functional assessments or other clear evidence demonstrating that plaintiff's functional abilities.  Here, as discussed in detail by the ALJ and above, there was sufficient evidence on which the ALJ could rely to create an RFC.

Simply put, Plaintiff's disagreement with the ALJ's RFC conclusion is not grounds for remand.  *See David C. v. Comm'r of Soc. Sec.*, No. 6:23-cv-06510-CJS, 2024 WL 4347151, *18 (W.D.N.Y. Sept. 30, 2024) (citing *Lisa M. o/b/o J.S. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00292 EAW, 2023 WL 3943997, at *3 (W.D.N.Y. June 12, 2023) ("A disagreement with how the ALJ weighed the evidence is not a valid basis to challenge the ALJ's determination.").  *See also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (noting that "[t]he substantial evidence standard means once an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would

*have to conclude otherwise*.'") (emphasis in original) (citation omitted).  Further, at a minimum, there is an evidentiary conflict within the record, and such conflicts are for the ALJ to resolve.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Accordingly, the Court concludes that the ALJ's mental limitations contained in the RFC are supported by substantial evidence.

## IV.    CONCLUSION

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 12) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 14) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: October 27, 2025                    J. Gregory Wehrman
Rochester, New York                          HON. J. Gregory Wehrman
                                                         United States Magistrate Judge